UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ETHAN MATHHEW
HOWARD,

                     Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

_____/

Case No. 1:18-cv-10522
District Judge Thomas L. Ludington
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 19), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 23) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 23),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Ethan Howard, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Supplemental Security Income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 19), the

Commissioner's cross-motion for summary judgment (DE 23) and the

administrative record (DE 12).

### A.      Background and Administrative History

On September 18, 2014, an application for supplemental security income

(SSI) benefits was protectively filed on behalf of Plaintiff, then a minor, alleging

disability beginning September 1, 2004.  (R. at 147-52.)[1]  In his disability report,

he alleges that he is disabled due to attention deficit hyperactivity disorder

(ADHD), mood disorder and depression.  (R. at 169.)  His application was denied

on February 18, 2015.  (R. at 79.)

On April 20, 2015, Plaintiff requested a hearing by an Administrative Law

Judge ("ALJ").  (R. at 84.)  On January 12, 2017, ALJ John Loughlin held a

hearing, at which Plaintiff and his mother testified.  (R. at 31-70.)  ALJ Loughlin

issued an opinion on March 14, 2017, which determined that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 15-27.)

On April 18, 2017, Plaintiff submitted a request for review of the hearing

decision/order.  (R. at 144-146.)  However, on December 11, 2017, the Appeals

---

[1] The Commissioner notes that while Plaintiff was an adolescent during the
relevant time period adjudicated in this claim, he attained age eighteen prior to
filing his civil action, and accordingly is proceeding under his own name on
appeal.

Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Loughlin's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 13, 2018.

### B.   Plaintiff's Medical History

The administrative record contains approximately 90 pages of medical records and 250 pages of educational records, all of which were available to the ALJ at the time of his March 14, 2017 decision. (R. at 198-214 [Exhibit 7E], 233-474 [Exhibit 11E], and 475-565 [Exhibits 1F-7F].) These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

#### 1.   Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner determines whether a child is disabled by analyzing three sequential steps: first, the child must not be engaged in "substantial gainful activity;" second,

the child must have a "severe" impairment;[2] and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. § 416.924(a). To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. In addition, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). If a child's impairment does not meet a listed impairment, the impairment may be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a.

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). The six domains of functioning are:

(i) acquiring and using information;

(ii) attending and completing tasks;

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 1520(c), 920(c).

(iii) interacting and relating with others;

(iv) moving about and manipulating objects;

(v) caring for yourself; and

(vi) health and physical well-being.

*Id.* § 416.926a(b)(1).  To be considered disabled, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  *Id.* § 416.926a(a).  A domain has "marked" limitations when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(2).  A domain has "extreme" limitations when an impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(3).

## 2.    The ALJ's Decision

Applying this framework, the ALJ concluded that Plaintiff was not disabled. At **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 18, 2014, the application date.  (R. at 18.)

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  attention deficit disorder (ADD), attention deficit hyperactivity

5

disorder (ADHD), affective disorder (AD), and oppositional defiant disorder
(ODD).  (*Id*. at 18.)

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled the severity of one of
the listed impairments.  (*Id.* at 18-19.)  He further found that Plaintiff's
impairments did not functionally equal a listed impairment.  (*Id.* at 19-27.)  In
making this determination, the ALJ determined that Plaintiff had less than marked
limitations in the domains of acquiring and using information, attending and
completing tasks, and interacting and relating with others, and no limitation in the
domains of moving about and manipulating objects, caring for himself, and health
and physical well-being.  (*Id.* at 22-27.)  The ALJ therefore concluded that Plaintiff
had not been disabled, as defined in the Social Security Act, since September 18,
2014, the date the application was filed.  (*Id*. at 27.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case
under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)
(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

7

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges that substantial evidence does not support the ALJ's findings at Step 3 of the sequential evaluation: (1) that Plaintiff does not have an impairment or combination of impairments that meet or medical equal Listing 112.11; and (2) that Plaintiff's impairments do not functionally equal any of the listings.  (DE 19 at 7, 15-33.)  The Commissioner contends that substantial evidence supports the ALJ's Step 3 determination.  (DE 23 at 8-26.)

### 1.    The ALJ's finding that Plaintiff's impairments do not meet or equal Listing 112.11 is supported by substantial evidence

The ALJ found that "there is insufficient evidence to support a finding that claimant's impairments meet[] or equal[]" a listing, specifically considering Listings 112.04 (Depressive, bipolar and related disorders) and 112.11 (Neurodevelopmental disorders).  (R. at 18.)  The ALJ then further specifically found that:

> The claimant's ADD or ADHD do not meet listing 112.11 because there is no proof of at least on[]e characteristic from 112.11: frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or hyperactive and impulsive behavior; significant difficulties

learning and using academic skills; or recurrent motor movement or vocalization.

(*Id*. at 19.)

Plaintiff contends that he meets Listing 112.11, and generally refers to an 11-page table listing documentation he contends demonstrates that he meets the Listing, and a second table listing accommodations provided to him by the schools. (DE 19 at 16-31.)  The Commissioner responds that the ALJ's determination that the medical record evidence does not satisfy the criteria of Listing 112.11 is supported by substantial evidence.  (DE 23 at 8-17.)

Plaintiff bears the burden of demonstrating that an impairment meets or equals a Listing at Step 3 of the sequential evaluation.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  In *Smith-Johnson v. Commissioner of Social Security*, 579 F. App'x 426 (6th Cir. 2014), the Sixth Circuit explained that "[a] claimant must do more than point to evidence on which the ALJ *could have based* his finding to raise a substantial question as to whether he has satisfied a listing."  *Id.* at 432 (emphasis added).  "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  *Id.*  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "If the record raises a substantial question whether a

9

claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any listed impairment." *Battaglini v. Comm'r of Soc. Sec.*, No. 4:15 CV 1454, 2016 WL 5232635, at *6 (N.D. Ohio Sept. 22, 2016).  But an error at Step 3 is harmless if the claimant has not shown that his impairment meets or medically equals a listed impairment.  *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Listing 112.11 provides:

112.11 Neurodevelopmental disorders (see 112.00B9), for children age 3 to attainment of age 18, satisfied by A *and* B:

A. *Medical documentation* of the requirements of paragraph 1, 2, or 3:

    1.  One or both of the following:

        a.  Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

        b.  Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

    2.  Significant difficulties learning and using academic skills; or

    3.  Recurrent motor movement or vocalization.

           AND

   B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

      1. Understand, remember, or apply information (see 112.00E1).

      2. Interact with others (see 112.00E2).

      3. Concentrate, persist, or maintain pace (see 112.00E3).

      4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11 (emphases added).

The ALJ found that Plaintiff failed to meet Part A of the Listing. (R. at 19.) While the ALJ's articulation of his finding at this step is admittedly cursory, the ALJ's factual findings regarding the record evidence elsewhere in his decision provides ample evidence supporting that Step 3 determination. (*See* R. at 19-21.) *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (acknowledging that there is no "heightened articulation standard" in considering the listing of impairments and the ALJ need not "spell[] out every consideration that went into the step three determination;" rather, factual findings elsewhere in the narrative may suffice as factual findings at step three). The ALJ acknowledged that Plaintiff has been diagnosed with ADD, ADHD, bipolar disorder (BD) and ODD, and that he has taken a variety of medications for these conditions, but that his treatment has been relatively conservative and that his medication regimen and counseling participation have been sporadic. (R. at 20-21, citing R. at 471, 489-521, 530-35, 541-65.) The ALJ explained that Plaintiff's mental status examinations have been

"generally unremarkable," with clear speech, focused concentration, intact memory, unremarkable thought process, affect, mood, and memory, but with poor insight and judgment.  (*Id*.)

The ALJ noted that consultative examiner George Pestrue, Ph.D., examined Plaintiff in February 2015 and noted that he was friendly and cooperative, his speech was appropriate and articulation clear, he was able to repeat six digits forward and four backwards and remembered all three objects given to him to remember after five minutes.  (R. 20, citing R. at 532-33.)  While Plaintiff was found to have some issues with simple calculations and concentration, his thought content was normal, his thought processes appeared fairly well organized, and his psychomotor activity appeared to be normal.  (*Id.*)

The ALJ further noted that the state agency psychological consultant, Joe DeLoach, Ph.D., opined in February 2015 that Plaintiff's impairments did not meet or medically equal Listing 112.11.  (R. at 21, citing R. at 74-75.)  The ALJ found this opinion generally consistent with Plaintiff's "lack of inpatient psychiatric hospitalizations during the relevant period, treatment observations, mental status examination findings, and [Plaintiff's] daily activities."  (*Id*.)  It is well-settled that ALJs may rely upon the findings of state agency reviewing physicians in this regard.  *See Johnson v. Comm'r of Soc. Sec.*, No. 13-11658, 2014 WL 4798963, at *7-8 (E.D. Mich. Sept. 25, 2014) (citations omitted).  The regulations recognize

12

these consultants as "highly qualified" and "experts in Social Security disability evaluation," and thus, their medical opinions lend further support to the ALJ's ruling.  *See* 20 C.F.R. § 416.927(e)(2)(i).

In response, Plaintiff has not presented an alternative medical opinion stating that he meets or medically equals Listing 112.11.  He instead includes an 11-page table in his motion listing documentation he contends evidences his meeting Listing 112.11(A)(1)(a) and (2), <u>consisting primarily of his educational or school records</u>, and also including a few medical records.  (DE 19 at 17-28.)[3]  Plaintiff also includes a second, one-page table in his motion "reflect[ing] the accommodations which were deemed to be appropriate for [him], by the school," consisting <u>only</u> of educational or school records.  (DE 19 at 29-30.)  However, Plaintiff fails to provide any analysis or otherwise explain *how* any of the documents he lists demonstrates that he meets Listing 112.11; instead he merely lists documents by date and record page number and then lists the "Listing Subpart" he claims is "Met" (i.e., A2, B2).  (DE 19 at 17-28.)  This cursory listing

---

[3] Plaintiff does not contend that me meets the requirements of (A)(1)(B) or (A)(3). (*See* DE19 at 17-28.)  The table also lists documentation Plaintiff contends evidences his meeting Part B of Listing 112.11, but the ALJ did not reach Part B because he found that Plaintiff failed to satisfy the requirements of Part A of the Listing.  (R. at 19.)  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11 (requiring evidence of Parts "A *and* B"). Because I conclude that the ALJ's finding that Plaintiff did not meet Part A of Listing 112.11 is supported by substantial evidence, I similarly will not address the Part B requirements.

of documents does not satisfy Plaintiff's burden to demonstrate that he meets

Listing 112.11.  Nor is the Court required to paw through each of these records and

essentially conduct an evidentiary hearing.  Nor is the Court permitted to re-weigh

the evidence, as Plaintiff appears to desire.  *See Mullins v. Sec'y of Health &*

*Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the

evidence.  That is solely the province of the Secretary.") (citation omitted).

Moreover, Part A of Listing 112.11 expressly requires "*[m]edical*

*documentation* of the requirements of paragraphs 1, 2, or 3."  20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 112.11(A) (emphasis added).  Thus, to the extent Plaintiff cites

to school or educational records in support of meeting Part A of Listing 112.11, he

fails to satisfy his burden.  *See Mitchell v. Berryhill*, No. 3-14-1108, 2017 WL

1131742, at *4 (M.D. Tenn. Mar. 27, 2017) (plaintiff failed to carry her burden to

meet Part A of Listing 112.11 by pointing to educational or school records instead

of medical records).  And, the three medical records Plaintiff includes in his table

fail to demonstrate that the ALJ's determination is not supported by substantial

evidence.  First, Plaintiff cites the March 2010 report from JoAnne Lawless, Ed. S.,

stating that Plaintiff "was retained in kindergarten, [yet] 'lifted to 1st and 2nd

grades and promoted to 3rd and 4th grades,'" as evidencing his meeting (A)(2) of

Listing 112.11 (regarding difficulties learning and using academic skills).  (DE 19

at 19, citing R. at 452.)  However, those statements were in the "Background

Information" section of Ms. Lawless's report.  (R. at 452.)  Plaintiff fails to explain

how that recitation of his "Background Information" constitutes a medical record

demonstrating that he meets the Listing.  *Cf. Bass v. McMahon*, 499 F.3d 506, 510

(6th Cir. 2007) (even a treating physician's report that merely repeats the

claimant's assertions is not objective medical evidence).  Ms. Lawless did perform

educational testing on Plaintiff, including the Wechsler Intelligence Scale for

Children – IV ("WISC-IV") and the Kaufman Test of Educational Achievement –

II, which revealed that Plaintiff was in the low average range of cognitive

functioning and that his reading, math and writing were found "to be within

acceptable limits given his overall cognitive abilities," and as a result Ms. Lawless

recommended that Plaintiff be "decertified" as having a learning disability.  (R. at

452-55.)  Somehow Plaintiff expects the Court to conclude from this non-medical

evidence that he meets the Listing, yet this evidence *supports* the ALJ's finding

that Plaintiff did *not* meet or equal Listing 112.11.

Second, Plaintiff lists the 2014 psychological evaluation performed by

Dennis Chitwood, M. Ed., LLP, CSOTS, reflecting that Plaintiff "acknowledged

he struggles academically and further clarified, 'they [his teachers] will give me

the look as if I'm stupid for asking for help,'" as showing that he meets Listing

112.11(A)(2).  (DE 19 at 25, citing R. at 476.)  As above, that statement reflects

information Dr. Chitwood collected from Plaintiff as "Background Information,"

15

and it is not a medical opinion.  (R. at 475-76.)  However, as part of his

"comprehensive psychological evaluation and sexual risk assessment" of Plaintiff

(conducted for the Roscommon County Probate and Family Court with regard to a

legal issue), Dr. Chitwood conducted a series of testing protocols, identified the

following diagnostic impressions relating to Axis I (which relates to psychological

disorders, except mental retardation and personality disorder): (1) dysthymic

disorder, and (2) "rule out post traumatic stress disorder-chronic," and assessed

Plaintiff with a GAF score of 70.  (R. at 481-484.)  As the ALJ recognized, "[a]

GAF score estimate between 61 and 70 indicates some *mild* symptoms or some

difficulty in social, occupational or school functioning, but *generally functioning*

*pretty well* and with some meaningful interpersonal relationships."  (R. at 21.)

Again, this record *supports* the ALJ's Step 3 determination that Plaintiff did not

meet Listing 112.11.

    And third, Plaintiff lists George Pestrue, Ph.D.'s February 2015 consultative

examination in which Dr. Pestrue noted under "concentration" that Plaintiff "was

unable to do either backward serial sevens or backward serial threes," and under

"simple calculations" that Plaintiff provided some incorrect answers and stated

"[m]ath is hard for me," as evidence that he meets Listing 112.11(A)(1)(a) and

(A)(2).  (DE 19 at 27, citing R. at 533.)  However, as explained above, the ALJ

expressly reviewed Dr. Pestrue's examination of Plaintiff, acknowledged that

16

Plaintiff "did have some issues with concentration and simple calculations," but that he otherwise found the exam "unremarkable," noting that Plaintiff's thought process and content were normal and fairly well organized, he was friendly and cooperative, his appearance and speech appropriate, and he could remember all three objects given to him after a period of approximately five minutes. (R. at 20, citing R. at 532-33.) While Dr. Pestrue did diagnose Plaintiff with ADHD, a "[d]iagnosis alone is insufficient to satisfy the requirements of any listing." *Tate ex rel. Tate v. Comm'r of Soc. Sec.*, 368 F.Supp.2d 661, 672 (E.D. Mich. 2005) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); *Neal v. Comm'r of Soc. Sec.*, No. 18-CV-10282, 2018 WL 4030761, at *2 (E.D. Mich. Aug. 23, 2018) ("[T]he mere fact that [plaintiff] has this impairment [ADHD] does not mean it is severe enough to meet Listing 112.11.").

Finally, the ALJ also recognized that Plaintiff struggled academically and had emotional issues that caused him to get into fights and be suspended from school, but also noted that his teachers in 2014 and 2016 remarked that Plaintiff had shown a renewed focus and motivation and that he was capable of better performance if he applied himself. (R. at 20-21.) He also noted that Plaintiff engages in social and physical activities and can still independently complete most activities of daily living, and that he offered clear and coherent testimony, dressed appropriately, made good eye contact, and that his testimony indicates that he

17

possessed the ability to concentrate and apply newly learned information when interested in the activity or topic, noting that Plaintiff studied Jujitsu for two years and "advanced up the ranks faster than others." (*Id.*)

Ultimately, Plaintiff's argument that he meets or equals Listing 112.11 amounts to a request that the Court reweigh the evidence, which the Court cannot do. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (noting that a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility"). Further, even if the evidence listed by Plaintiff were a "mixed blessing" for the listing-level impairment he advocates here, reversal is not permitted because there is also substantial evidence to support the ALJ's Step Three finding, as explained above. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ," the Commissioner's decision cannot be overturned). Plaintiff has failed to show that the ALJ's finding is not supported by substantial evidence, or that he otherwise meets or equals Listing 112.11. Accordingly, Plaintiff's claim of error should be denied.

**2.   The ALJ's finding that Plaintiff's impairments did not functionally equal the Listings is supported by substantial evidence**

The ALJ considered the six functional domains and found that Plaintiff's impairments did not functionally equal a Listing.  (R. at 19-27.)  Specifically, he found that Plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks and interacting and relating with others, and no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.  (R. at 22-27.)

Plaintiff argues that he has at least a marked, if not extreme impairment in the domains of: (1) acquiring and using information; (2) attending and completing tasks; and, (3) interacting and relating with others.  (DE 19 at 32-33.)  In support of that argument, Plaintiff generally refers back to the "above-documented chart reflecting findings from evaluations, assessments and other school and mental health documents," and he broadly contends that "[t]he ALJ lacked substantial evidence for his finding that [Plaintiff] had less than marked limitations in the aforementioned areas."  (*Id.* at 32.)  He also claims, without citing to any record evidence other than "the chart noted above," that "poor grades and numerous accommodations were clearly present throughout [his] school attendance" and that "the ALJ pretty much ignored the plethora of evidence showing [his] struggles with his school work, with being able to get to school and with completing assignments."  (*Id.* at 32-33.)  However, it is Plaintiff who "pretty much ignored the plethora of evidence," both by failing to provide any meaningful analysis of the

19

records on which he hangs his proverbial hat, and by ignoring the "plethora of evidence" cited in support of the ALJ's findings.  The Commissioner responds that the ALJ's determination that Plaintiff's impairments did not functionally equal the Listings is supported by substantial evidence.  (DE 23 at 18-26.)  I agree with the Commissioner.

First, Plaintiff fails to explain *how* the "above-documented chart" demonstrates that he has a marked or extreme limitation in any of the three functional domains he identifies, or *how* the ALJ's findings with respect to those domains are not supported by substantial evidence.  He instead only generally refers to a long list of records provided earlier in his motion that he asserts support a finding of a marked or extreme limitation, without identifying which records apply to which domain(s).  He also broadly refers to unidentified records "showing Plaintiff's struggles with his school work, with being able to get to school and with completing assignments."  (See DE 19 at 32-33.)  However, as this Court has previously held when faced with a similarly-deficient argument, Plaintiff's "almost complete lack of argument development renders the majority of his arguments waived. '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'"  *Spiteri v. Colvin*, 2015 WL 7258749, at *3 (E.D.

20

Mich. Nov. 9, 2015) (Stafford, M.J.) (footnote omitted), *report and recommendation adopted at* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)) (footnote, citation and internal quotation marks omitted); *see also Mitcham v. Detroit*, 355 Mich. 182, 203 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). The administrative record in this case is over 550 pages long, and the Court will not search the record for potential arguments or evidence beneficial to Plaintiff. *Jones v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a *de novo* review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.") (quotation marks and citations omitted).

a. **Acquiring and using information**

The ALJ found, with respect to the domain of acquiring and using information (which refers to how well the child acquires or learns information and

how well the child uses the information she has learned, 20 C.F.R. § 416.926a(g))

that:

> The claimant has less than marked limitation in acquiring and using information. While the claimant has shown poor judgment and insight at times, the objective medical evidence does not support the claimant's allegations (2F/6, 11). In October 2014, the claimant['s] special-education teacher remarked that the claimant had shown a renewed focus and motivation and then [sic] the claimant had maintained his motivation despite lack of success in some areas (7E). In February 2015, the claimant presented to George Pestrue, Ph.D., for a consultative examination (5F). Dr. Pestrue remarked that the claimant could remember all three objects given to him to remember after five minutes (5F/4). While the claimant did have some issues with concentration and simple calculations, his thought process and content were normal and fairly well organized (5F/5). The claimant's mental status examinations have generally been unremarkable (2F; 5F; 7F). The claimant offered clear and coherent hearing testimony. His testimony indicated that he possessed the ability to concentrate and apply newly learned information when interested in the activity or topic. Furthermore, he still engages in social and physical activities and can still independently complete most activities of daily living (3E; 4E; 7E; 2F; 5F*;* 7F; Testimony).

(R. at 22-23.)

### b.    Attending and completing tasks

The ALJ found with respect to the domain of attending and completing tasks (which refers to "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them," 20 C.F.R. § 416.926a(h)) that:

> The claimant has less than marked limitation in attending and completing tasks. The objective medical record does not support the

22

claimant's allegations. The claimant's mental status examinations have generally been unremarkable (2F; 5F; 7F).   In October 2014, the claimant['s] special-education teacher remarked that the claimant had shown a renewed focus and motivation and then [sic] the claimant had maintained his motivation despite lack of success in some areas (7E). While the claimant has shown some issues with concentration and simple calculations, his consultative examiner and other treatment providers have stated that the claimant's thought process and content were normal and fairly well organized (2F; 5F; 7F). Furthermore, he still engages in social and physical activities and can still independently complete most activities of daily living (3E; 7E; 2F; 5F; 7F; Testimony).

(R. at 23.)

### c.   Interacting and relating with others

Further, the ALJ found with respect to the domain of interacting and relating with others (which refers to how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others, 20 C.F.R. § 416.926a(i)) that:

> The claimant has less than marked limitation in interacting and relating with others. The claimant's allegations are inconsistent with the objective medical record and the claimant's activities of daily living. The claimant testified that he had "a lot" of friends. He also testified that he had a girlfriend (Testimony). Dr. Pestrue remarked that the claimant was friendly and cooperative. His speech volume and pace were appropriate and he displayed clear articulation (5F). The claimant has consistently denied suicidal and homicidal ideation (7F).

(R. at 24.)[4]

As explained above, the ALJ thoroughly discussed Plaintiff's medical and school records, his activities of daily living and the hearing testimony from both Plaintiff and his mother in support of his Step 3 findings, and acknowledged that Plaintiff struggled with schoolwork and was not attending school at the time of the hearing. (R. at 20-21.) He also afforded great weight to the opinion of the state agency psychological consultant who opined that Plaintiff had less than marked limitations in the three domains identified by Plaintiff, finding that the opinion is "generally consistent with the claimant's lack of inpatient psychiatric examinations during the relevant period, treatment observations, mental status examination findings, and the claimant's daily activities discussed above." (R. at 21, citing R. at 75.) Plaintiff does not challenge that opinion evidence or present any opinion evidence that he otherwise experiences marked or extreme limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. It is well settled that "[h]aving a less than marked impairment certainly does not mean that the claimant is unimpaired, but the mere existence of an impairment does not necessarily mean … that a claimant

---

[4] While the ALJ acknowledged earlier in his decision that Plaintiff stated he jumped off a building at school in an attempt to kill himself when he was in sixth grade (R. at 20, citing R. at 540; R. at 476-77), he also noted that Plaintiff has not been suicidal since then and has consistently denied suicidal or homicidal ideation. (R. at 20, citing R. at 539, 541-65.)

is "markedly" impaired in a particular domain." *Handley v. Comm'r of Soc. Sec.*,
No. 15-12656, 2016 WL 4761606, at *8 (E.D. Mich. Aug. 18, 2016), *report and
recommendation adopted*, 2016 WL 4729655 (E.D. Mich. Sept. 12, 2016).

There is substantial evidence in the record to support the ALJ's decision, and
the Court defers to that finding even if there is substantial evidence in the record
that would have supported an opposite conclusion. *Blakley*, 581 F.3d at 406; *see
also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]here is a 'zone of
choice' within which the Commissioner can act, without the fear of court
interference.") (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).
Plaintiff has failed to meet his burden to show that the ALJ erred in finding that
Plaintiff's impairments do not functionally equal a listed impairment, and his
second claim of error should be denied.

**F.    Conclusion**

Plaintiff essentially tells the Court, "here's a pile of (mostly educational)
records, now go find whatever might support my position, and take my word for it
that it all meets or equals a Listing."  This the Court may not and will not do.  For
the foregoing reasons, Plaintiff has not convinced the Court that the ALJ erred in
finding that Plaintiff did not meet or functionally equal the Listings – a burden that
is his to meet.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)
("during the first four steps, the claimant has the burden of proof; this burden shifts

to the Commissioner only at Step Five.").  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 23), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  August 14, 2019                    s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE